UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
STEVEN ALEXANDER CARRION, an Infant by his
Mother and Natural Guardian, AIDA CARRION,

                                                    DOCKET NO. 02 CIV 2166 (DC)


                        Plaintiffs,                 **AMENDED
                                                    INFANT'S COMPROMISE
                                                    ORDER**

                        -against-


510 WEST 144 STREET ASSOCIATES,
LAURENCE GLUCK, STEVEN C. WITKOFF,
STELLAR MANAGEMENT CO., INC.,
NEW YORK-PRESBYTERIAN MEDICAL
CENTER, INC., WASHINGTON HEIGHTS-
INWOOD AMBULATORY CARE NETWORK
CORPORATION (ACNC) and FEDERAL
HOME LOAN MORTGAGE CORPORATION,

                        Defendants.
----------------------------------------------------------------X

       Upon reading and filing the Petition of Steven Alexander Carrion, dated July 18, 2007

and the exhibits thereto; and the Declaration of Brian J. Farrell dated July 18, 2007, seeking an

order to amend the Infant's Compromise Order dated February 4, 2005 by deleting Schedule E of

the *Steven Alexander Carrion Structured Settlement Administration Trust* incorporated by

reference in said Order and replacing it with a Revised Schedule E in the form set out herein.

       Now, the court, finding that Steven Carrion has attained the age of eighteen years, and

upon the motion of Brian J. Farrell, attorney for the Petitioner, it is

       ORDERED, that Schedule E of the *Steven Alexander Carrion Structured Settlement
Administration Trust* is deleted; and it is further

       ORDERED, that the following Schedule E is substituted in the place and stead thereof:

**REVISED SCHEDULE E TO THE ASSIGNMENT AGREEMENT
FOR THE STEVEN ALEXANDER CARRION STRUCTURED SETTLEMENT**

**URATION AND ADJUSTMENT PROVISIONS**

Provisions for the duration of and the adjustments to the Structured Settlement are set forth herein.

**A.     DURATION**

This Structured Settlement shall continue until August 4, 2007, the PAYMENT RECIPIENT having attained the age of 18 years on September 4, 2006.  In the event the PAYMENT RECIPIENT does not wish to terminate on August 4, 2007, the PAYMENT RECIPIENT must give written notice of said intent on or before August 4, 2007, at which time a new payment stream and duration will be determined on the current amount of the Reserve, and the plaintiff's wishes.  The Structured Settlement, if renewed on August 4, 2007 may be renewed at the end of each subsequent one (1) year period.  Each renewal shall be automatic unless the ASSIGNEE shall have received written notice of intent not to renew from the PAYMENT RECIPIENT.

**B.     ADJUSTMENT**

The payment terms and conditions of this Structured Settlement as described on Schedule C of this Agreement may be adjusted by the PAYMENT RECIPIENT every year, with an initial adjustment date of September 4, 2006, upon the PAYMENT RECIPIENT attaining eighteen (18) years of age, subject to the following conditions:

1.     The adjustment requested shall not threaten the financial stability of the Structured Settlement;

2.     The requested adjustment shall not place any increased burden on the ASSIGNEE;

3.     The adjustment requested shall be approved by the STRUCTURED SETTLEMENT FACILITATOR and the ASSIGNEE.  Such approval Shall not be unreasonably withheld.

4.     The requested adjustment subject to this provision has been ordered by a Court of appropriate jurisdiction should the PAYMENT RECIPIENT be a minor or have been adjudicated an incompetent of the date of the requested adjustment.

5.     In the event that this right of adjustment is not exercised on the date that it occurs, said right shall continue until the date prior to the next adjustment date.

ORDERED, that a copy of this order be served with Notice of Entry upon the Bank of New York as Trustee and on the Halpern Group, and it is further

ORDERED, that in all other respects the said Infant's Compromise Order dated February 4, 2005, shall be and remain in full force and effect; and it is further

ORDERED, that the Hudson Valley Bank, as Trustee shall pay to the Law Offices of Brian J. Farrell from the Trust, the sum of $_____ as and for his fee for the preparation and submission of the within papers, including all disbursements

Dated:

_____

Denny Chin, U.S.D.J.

# PETITION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
STEVEN ALEXANDER CARRION,
An Infant by his Mother and Natural Guardian,                    Docket No.: 02 CIV 2166 (DC)
AIDA CARRION,

                                        Plaintiff,               **PETITION**

            -against-

605 REALTY ASSOCIATES LIMITED
PARTNERSHIP, 510 WEST 144 STREET
ASSOCIATES, RICHARD K. GOIDEL,
LAURENCE GLUCK, STEVEN C. WITKOFF,
STELLAR MANAGEMENT CO., INC.,
PRESBYTERIAN MEDICAL CENTER, INC.,
WASHINGTON HEIGHTS-INWOOD
AMBULATORY CARE NETWORK
CORPORATION (ACNC) and FEDERAL
HOME LOAN MORTGAGE CORPORATION,

                                        Defendants.
--------------------------------------------------------------------X
STATE OF NEW YORK              )

COUNTY OF WESTCHESTER          ) ss.:


        STEVEN ALEXANDER CARRION, being duly sworn, deposes and says:

        1.      I am one of the infant Plaintiffs in this action.  I am now 18 years of age been

born on September 4, 1988.

        2.      I reside at 510 West 144th Street, Apt. 6, New York, New York 10031.

        3.      On November 8, 2004 the above case was settled and the Court signed a Revised

Infant's Compromise Order (RICO) on February 4, 2005.  Under the provisions of the RICO I

received a total of $454,880.50 after fees and expenses, that sum was placed in Trust with the

Bank of New York, a Trustee.  A copy of the RICO is attached as **Exhibit 1.**

4.      As of July 18, 2007, the balance of the trust was $430,446.13.  A letter from The

Bank of New York stating said balance is attached as **Exhibit 2**.

5.      The Trust, a copy of which is attached as **Exhibit 3** provides certain monthly

payments as are set out in the RICO on page 5 thereof and permits certain other payments for

medical, education and tax expenses.  See, **Exhibit 3**, pg 10-12.

6.      As permitted by the terms of the Trust, I adjusted the monthly payments from

$300.00 monthly to $1,200.00 monthly on September 4, 2006.  The trust does not permit other

changes except by order of the Court.

7.      I am not employed nor am I a student.  I plan to move to Florida to be with my

brother Roque and my uncle Manny Carrion who are in business buying houses and

reconditioning them for re-sale, and other real estate investments

8.      I intend to be a part of that business and I want to have a part of my funds

available for investing in the business.

### THIS REQUEST

9.      The Trust continues by its terms until September 4, 2018 when I will turn thirty

(30) years of age.  I wish to modify the trust to obtain a payment of one-half of the balance of the

trust immediately and leave the remaining half in Trust. I believe that since I am over the age of

eighteen and not incompetent I should have the use of my funds sooner rather than later.

10.     My attorney advises that the most efficient method of modifying the Trust to

conform to my intentions is by revising Schedule E of the Trust as set forth in the Order.  I agree

to that method and ask the Court to order that change.

2

11.     My uncle Manny has been a family advisor most of my life and I have great confidence in his guidance.  Manny is a realtor in Port St. Lucie, Florida where I intend to move and he operates a business with my brother that I will become a part of.

12.     I have discussed this matter several times with my attorney who has advised that he believes that I lack the experience and knowledge to embark on a business venture and potentially use all or most of my money when I am still in my youth.  I appreciate his advice but I am adamant in my request.

13.     I further request the Court to order the payment of a reasonable fee to the Law Offices of Brian J. Farrell for preparation and filing of these papers.

14.     No previous application for the relief requested herein has been made to this or any other Court.

WHEREFORE, I respectfully pray that this Court make and enter an Order permitting the withdrawal of a portion of my funds for the purposes set forth herein.

Steven Carrion
STEVEN CARRION

Sworn to before me this
18th day of July, 2007

Notary Public

BRIAN J FARRELL
Notary Public, State of New York
No. 02FA5010194
Qualified in West County
Commission Expires 03/29/2011

3

# ATTORNEY'S
# DECLARATION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
STEVEN ALEXANDER CARRION, An
Infant by his Mother and Natural Guardian,          Docket No.: 02 CIV 2166 (DC)
AIDA CARRION,

                                    Plaintiffs,          **ATTORNEY'S**
                                                         **DECLARATION**

          -against-

510 WEST 144 STREET ASSOCIATES,
LAURENCE GLUCK, STEVEN C. WITKOFF,
STELLAR MANAGEMENT CO., INC.,
NEW YORK-PRESBYTERIAN MEDICAL
CENTER, INC., WASHINGTON HEIGHTS-
INWOOD AMBULATORY CARE NETWORK
CORPORATION (ACNC) and FEDERAL
HOME LOAN MORTGAGE CORPORATION,

                                    Defendants.
-----------------------------------------------------------------X

          BRIAN J. FARRELL, an attorney duly admitted to practice law in the State of New York

and in this Court, declares the following, under penalty of perjury:

          1.        I am the attorney for the Petitioner herein and am familiar with the facts and

circumstances of this matter.

          2.        This case involved the negligence of defendants in the ownership, operation,

management, maintenance and repair of the premises known as 510 West 44th Street, New York,

New York, where the infant and his family resided from 1984 until June 1996, resulting in Steven

being lead poisoned and the negligence of the medical defendants in failing to timely discover and

treat the infant for these lead injuries.

          3.        A lawsuit was instituted on Steven's behalf which was ultimately settled for the sum

of $685,000.00 with a net recovery to the then infant plaintiff in the amount of $454,880.50.  See,

Carrion Aff. ¶3.

4.    On February 4, 2005, the Hon. Denny Chin signed a Revised Infant's Compromise Order (RICO) resolving the case. The RICO provided, inter alia, that the sum of $454,880.50 was to be paid to The Bank of New York to be held as a Structured Settlement to be known as the *(Steven Alexander Carrion Structured Settlement Administration Trust)* (SACSSAT) under the terms and conditions set out therein, a copy of the SACSSAT was attached to the RICO as Exhibit 4 and is attached to these papers as **Exhibit 3**. A copy of the ICO is attached as **Exhibit 1**. See, Carrion Pet ¶3. The SACSSAT was incorporated into the ICO y reference. See, **Exhibit 1** p. 4.

5.    The Court ordered that certain payments be made from SACCSAT in accordance with Schedule C of the Trust and provided that the Trust would continue until September 4, 2018 when Steven attains the age of thirty years. See, **Exhibit 3**, pg. 10; See, also, **Exhibit 1,** pgs. 5-7.

6.    Steven Carrion attained the age of eighteen on September 4, 2006. He has completed about two years of high school but he has decided not to complete his high school education and will obtain his G.E.D. at a later date instead.

7.    Steven wants to move to Florida and go into business with his brother Roque (also a plaintiff in this action) and his Uncle Manny. See, Carrion Pet. ¶¶ 7, 10.

8.    I have met Uncle Manny (Steven's mother's brother) several times as he has been a family advisor for many years. I have spoken to him about this request on several occasions and he believes (as does Steven's mother) that with his uncle's guidance and knowledge of the real estate business, Steven will do very well, as his brother Roque has.

9.    I have had many conversations with Steven and his mother about the pitfalls of starting out in business with little experience. See, Carrion Pet. ¶¶11-12.

10.    I certainly believe that Steven is capable of running his own life and or making

2

decisions with his own money.  My cautions concerned maturity and experience, not competency.  I have long believed and still do that Uncle Manny has the boy's best interests at heart.

11.     I ask the Court to give good consideration to Steven's request.

12.     The proposed amendment seeks to change the end date of the Trust as that seems to be to be the simplest way to accomplish Steven's wishes.

13.     I have included a separate Declaration regarding my services and I ask the Court to approve a reasonable fee.  See, Carrion Pet. ¶13.

14.     No previous application for the relief requested herein has been made to this or any other court.

WHEREFORE, I respectfully request this Court to grant this petition in its entirety.

DATED:  YONKERS, NEW YORK
          July 19, 2007

BRIAN J. FARRELL (8708)

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

STEVEN CARRION and ROQUE CARRION,                    DOCKET NO. 02 CIV 2166 (DC)
Infants by their Mother and Natural Guardian,
AIDA CARRION,
                                                              **REVISED**
                                                        **INFANT'S COMPROMISE**
                                    Plaintiffs,                **ORDER**


                -against-


605 REALTY ASSOCIATES LIMITED
PARTNERSHIP, 510 WEST 144 STREET
ASSOCIATES, RICHARD K. GOIDEL,
LAURENCE GLUCK, STEVEN C. WITKOFF,
STELLAR MANAGEMENT CO., INC.,
PRESBYTERIAN MEDICAL CENTER, INC.,
WASHINGTON HEIGHTS-INWOOD
AMBULATORY CARE NETWORK
CORPORATION (ACNC) and FEDERAL
HOME LOAN MORTGAGE CORPORATION,

                                    Defendants.
-------------------------------------------------------------X

        Upon reading and filing the affidavit of Aida Carrion, the mother and natural guardian of

the infant plaintiff, Steven Alexander Carrion, dated November 24, 2004; the affidavit of the

infant plaintiff, Steven Alexander Carrion, dated November 24, 2004; and the affirmation of

John E. Fitzgerald, Esq., dated January 20, 2005; the affidavit of Richard G. Halpern, dated

December 29, 2004; and Aida Carrion, Steven Alexander Carrion and their attorney having

appeared before this Court on _____, 2005; and it appearing that Steven Alexander

Carrion was born on September 4, 1988; and upon all papers filed and proceedings had herein;

and it appearing to the satisfaction of the Court that the best interest of said infant will be served,

        NOW, on motion of Fitzgerald & Fitzgerald, P.C., attorneys for the Plaintiffs it is

ORDERED, that the caption be amended by deleting Roque Carrion, 605 Realty Associates Limited Partnership and Richard K. Goidel and by changing the infant plaintiff's name to Steven Alexander Carrion as follows:

```
-----------------------------------------------------X
          STEVEN ALEXANDER CARRION, an Infant
          by his Mother and Natural Guardian, AIDA
          CARRION,
                                        Plaintiffs,

                -against-

          510 WEST 144 STREET ASSOCIATES,
          LAURENCE GLUCK, STEVEN C. WITKOFF,
          STELLAR MANAGEMENT CO., INC.,
          NEW YORK-PRESBYTERIAN HOSPITAL,
          s/h/a PRESBYTERIAN MEDICAL CENTER, INC.,
          WASHINGTON HEIGHTS-INWOOD
          AMBULATORY CARE NETWORK
          CORPORATION (ACNC) and FEDERAL
          HOME LOAN MORTGAGE CORPORATION,

                                        Defendants.
-----------------------------------------------------X
```

and it is further

ORDERED, that Aida Carrion, as mother and natural guardian of Steven Alexander Carrion, be and she is hereby authorized to enter into a compromise of the personal injury claims of Steven Alexander Carrion against defendants 510 West 144 Street Associates, Laurence Gluck, Steven C. Witkoff, Stellar Management Co., Inc., New York-Presbyterian Hospital, s/h/a Presbyterian Medical Center, Inc., Washington Heights-Inwood Ambulatory Care Network Corporation (ACNC) and Federal Home Loan Mortgage Corporation upon the within terms; and it is further

ORDERED, that the cause of action brought on behalf of Steven Alexander Carrion against defendants 510 West 144 Street Associates, Laurence Gluck, Steven C. Witkoff, Stellar Management Co., Inc., New York-Presbyterian Hospital, s/h/a Presbyterian Medical Center, Inc.,

2

Washington Heights-Inwood Ambulatory Care Network Corporation (ACNC) and Federal Home

Loan Mortgage Corporation be and the same is hereby settled for the sum of $685,000.00, in full

settlement of the infant Steven Alexander Carrion's claims against them; and it is further

ORDERED that defendants 510 West 144 Street Associates, Laurence Gluck, Steven C.

Witkoff and Stellar Management Co., Inc., (together, the "510 Defendants"), by their insurer,

North American Specialty Insurance Company, shall pay $204,000.00 as follows:

A.   $808.29 to the City of New York Human Resources Administration,
     Office of Revenues and Investigation, Department of Liens and
     Recoveries in full satisfaction of all liens held by said City against the
     proceeds of Steven's recovery;



B.   $203,191.71 to Fitzgerald & Fitzgerald, P.C., as and for a portion
     of its attorneys' fees, inclusive of all disbursements expended on behalf
     of the infant plaintiff;

and it is further

ORDERED that the 510 Defendants, by their insurer, Interstate Indemnity Company,

shall pay $112,000.00 as follows:



A.   $26,119.50 to Fitzgerald & Fitzgerald, P.C., as and for the
     remainder of its attorneys' fees;



B.   $85,880.50 to the Bank of New York, as Trustee of the *Steven
     Alexander Carrion Structured Settlement Administration Trust* to
     partially fund a Structured Settlement pursuant to the Steven Alexander
     Carrion Structured Settlement Assignment Agreement, a specimen copy

3

of which is attached as Exhibit 4 to this Order, and is hereby incorporated by reference into this Order;

and it is further

ORDERED that the 510 Defendants, by their insurer, First State Management Group, shall pay $84,000.00 as follows:

    A.    $84,000.00 to the Bank of New York, as Trustee of the *Steven Alexander Carrion Structured Settlement Administration Trust*;

and it is further

ORDERED that defendants New York Presbyterian Hospital, s/h/a Presbyterian Medical Center, Inc., Washington Heights-Inwood Ambulatory Care Network Corporation (ACNC), by their insurer, MCIC Vermont, Inc., shall pay $200,000.00 as follows:

    A.    $200,000.00 to the Bank of New York, as Trustee of the *Steven Alexander Carrion Structured Settlement Administration Trust*;

and it is further

ORDERED that defendant Federal Home Loan Mortgage Corporation shall pay $85,000.00 as follows:

    A.    $85,000.00 to the Bank of New York, as Trustee of the *Steven Alexander Carrion Structured Settlement Administration Trust*;

and it is further

ORDERED, that Bank of New York be and hereby is authorized to act as Administrator for the Structured Settlement and to receive and invest the net proceeds of the settlement, as set forth herein, on behalf of the infant plaintiff Steven Alexander Carrion, and, pursuant to this and

4

any further orders of the Court, and Aida Carrion is authorized to execute the Assignment Agreement as Assignor for the infant plaintiff Steven Alexander Carrion; and it is further

ORDERED, that subject to further order of this Court, Bank of New York is hereby authorized to invest Steven's net proceeds and any additional funds that may from time to time be received by it or held in the Structured Settlement to be established pursuant to the terms of this Order for Steven's benefit, in financial instruments enumerated in New York CPLR §§ 1206 and 1210(d); and it is further

ORDERED, that the Structured Settlement shall in accordance with the terms of the Steven Alexander Carrion Structured Settlement Administration Trust make the following payments:

The Assignee shall pay to the Payment Recipient Three Hundred dollars ($300.00) per month, commencing thirty (30) days following receipt of all executed documents and good funds by the Assignee, (the "First Periodic Payment"), and continuing on the fifteenth (15th) day of each month thereafter until the Structured Settlement shall terminate; provided, however, that the Assignee, to the extent practicable, shall, at the express written direction of the Payment Recipient (or the Structured Settlement Facilitator), make the First Periodic Payment prior to said thirty (30) day period. Such payment shall increase at the rate of Three percent (3%) per annum; and it is further

ORDERED, that upon the written request of the "Payment Recipient" as defined in the Steven Alexander Carrion Structured Settlement Assignment Agreement, the "Assignee", as defined in the Steven Alexander Carrion Structured Settlement Assignment Agreement, shall pay to or apply for the benefit of the Payment Recipient so much, all or none of the Structured Settlement income and principal as shall be required to pay for the normal, customary and

5

emergency medical cares (including experimental modalities, where appropriate), dental, health and life care needs of the Payment Recipient, (i.e., wheelchairs; walkers; handicapped accessible van; handicapped accessible home modifications, if required; physical, aquatic, occupational and/or speech therapies as prescribed, etc.) but only to the extent that such amounts are not covered by insurance or programs of public assistance available to the Payment Recipient. Such payments shall be made by the Assignee either directly to the medical facility, hospital, physician, dentist, pharmacy or other health or medical care provider, or by reimbursement to the Payment Recipient or other person incurring any such expense on behalf of the Payment Recipient; and it is further

ORDERED, that upon the written request of the Payment Recipient the Assignee shall pay for premiums of insurance covering the medical care of the Payment Recipient. Such payments shall be made by the Assignee, either directly to the insurance company or other provider of insurance, or by reimbursement to the Payment Recipient or other person incurring any such expenses on behalf of the Payment Recipient; and it is further

ORDERED, that upon the written request of the Payment Recipient, the Assignee shall pay for the normal, customary and "special" educational expenses of the Payment Recipient, including, but not limited to: expenses for tuition; room and board; books; supplies; computers and associated or analogous equipment, supplies and software; transportation; and laboratory fees, etc. For purposes of this provision, the term "educational expenses" refers to those expenses enumerated above incurred by this Payment Recipient for primary, secondary and "special" education as well as college (two or four year), technical, vocational or trade school, and/or graduate or postgraduate education. Such payments shall be made by the Assignee either directly to the educational institution or the educational provider, or by reimbursement to the

Payment Recipient or other person incurring any such expenses on behalf of the Payment Recipient; and it is further

ORDERED, that the Assignee shall pay on behalf of the Payment Recipient an amount sufficient to satisfy the Payment Recipient's federal and state income tax liability due on income from the Structured Settlement, whether or not such income has actually been distributed to or for the benefit of the Payment Recipient. The Assignee shall make such payments to the respective taxing authorities as estimated payments of the Structured Settlement allocable to the Payment Recipient or as payments on behalf of the Payment Recipient. The federal and state tax payments shall be calculated by reference to the residence of the Payment Recipient (as provided by written notice to the Assignee) and the maximum federal and state income tax rates applicable to the type and amount of income of the Structured Settlement allocable to the Payment Recipient. The Assignee also shall reimburse the Payment Recipient for expenses incurred by the Payment Recipient in connection with the preparation of income tax returns required to properly report the income from the Structured Settlement; and it is further

ORDERED, that except upon further order of this or some other court of competent jurisdiction, there shall be no distribution from the Steven Alexander Carrion Structured Settlement not specifically ordered herein; and it is further

ORDERED, that the Plaintiffs shall hold the Defendants and their insurance carriers harmless from any liens; and it is further

ORDERED, that conditioned upon compliance with the terms of this Order, Aida Carrion be and she is hereby authorized and empowered to execute and deliver General Releases in favor of the Defendants and their insurance carriers, Stipulations of Discontinuance and any other instruments necessary to effect said settlement; and it is further

ORDERED, that the filing of a bond is hereby waived.

DATED: _____2/4_____, 2005

HON. DENNY CHIN
UNITED STATES DISTRICT JUDGE

8





**MEMORANDUM**

*The Private Bank – The Bank of New York*

TO:        **Brian Farrell**
           **The Law Offices of Brian J. Farrell**
           **538 Riverdale Avenue**
           **Yonkers, NY 10705**

FROM:      **Denise L. McGinnis**

DATE:      **July 19, 2007**

RE:        **A/C 566731 Steven A. Carrion Structured Settlement**

**Dear Brian,**
**Please be advised that the market value of the above referenced trust for the benefit of**
**Steven A. Carrion has a market value of $430,446.13 as of July 18, 2007.**

**If you have any questions please call me.**

**Thank You,**

**Denise L. McGinnis**
**Vice President**